UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**DENISE EALY**
    Plaintiff

v.                                                                                          No. 3:11CV-00010-S

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant

## MAGISTRATE JUDGE'S REPORT
## and RECOMMENDATION

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Alvin Wax. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 12 and 15, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on May 12, 2009, by administrative law judge (ALJ) D. Lyndell Pickett. In support of his decision denying Title II and Title XVI benefits, Judge Pickett entered the following numbered findings:

    1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

    2. The claimant has not engaged in substantial gainful activity since August 27, 2006, the alleged onset date (20 CFR 404.1571 et seq. and 416.971 et seq.).

    3. The claimant has the following severe impairments: chronic pancreatitis secondary to ampullary stenosis and degenerative disc disease of the lumbar spine (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she requires the option to alternate between standing and sitting, with no crawling and only occasional balancing, stooping and kneeling, and no climbing of ropes, ladders, and scaffolds.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 14, 1960, and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 27, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Administrative Record (AR), pp. 14-19).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal

2

standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other

3

financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

    3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A severe impairment is one that "significantly limits" a claimant's ability to do "basic work activities [that are] necessary to do most jobs [such as] walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is deemed to be non-severe. *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a <u>de minimis</u>, or significant, effect on the claimant's ability to work is severe, and the sequential evaluation should proceed to Step #3. Nevertheless, the severity step can and should continue to function as an "administrative convenience to screen out claims that are totally groundless solely from a medical standpoint." *Higgs v. Secretary*, 880 F.2d 860, 863 (1988). In addition, the severe impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a <u>prima facie</u> showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Richardson v. Secretary*, 750 F.2d 506, 509 (6th Cir., 1984). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

### The Plaintiff's Medical Condition

The plaintiff was born on January 14, 1960 (AR, p. 24). In or before September of 2004, her gallbladder was surgically removed, i.e., she underwent cholecystectomy. The plaintiff's principal medical impairment is chronic pancreatitis. Chronic pancreatitis is a progressive, irreversible inflammation of the pancreas that alters its normal structure and function. The dominant symptom is persistent upper abdominal pain resulting in malabsorption of the fats and proteins in food. There may be considerable weight loss due to malabsorption, and there is a significant risk of narcotic analgesic addiction.

In September of 2004, testing revealed that the plaintiff suffers or has suffered from a congenital anatomical abnormality consisting of a stenosis, or narrowing, of the ampulla of Vater. The ampulla of Vater is a nipple-like projection into the portion of the gut into which the pancreatic and bile ducts open. The plaintiff's chronic pancreatitis was caused by stenosis of the ampulla of Vater.

On or about September 20, 2004, the plaintiff submitted to an endoscopic retrograde cholangiopancreatography (ERCP), which was performed by her treating gastroenterologist, Whitney Jones (AR, pp. 168-174). The ERCP is a sophisticated medical instrument that may serve a diagnostic and/or interventional role. According to web.med.com:

> An endoscopic retrograde cholangiopancreatogram (ERCP) is a test that combines the use of a flexible, lighted scope (endoscope) with X-ray pictures to examine the tubes that drain the liver, gallbladder, and pancreas.
>
> The endoscope is inserted through the mouth and gently moved down the throat into the esophagus, stomach, and duodenum until it reaches the point where the ducts from the pancreas (pancreatic ducts) and gallbladder (bile ducts) drain into the duodenum.
>
> ERCP can treat certain problems found during the test. If an abnormal growth is seen, an instrument can be inserted through the endoscope to obtain a sample of the tissue for further testing (biopsy). If a gallstone is present in the common bile duct, the doctor can sometimes remove the stone with instruments inserted through the endoscope. A narrowed bile duct can be opened by inserting a small wire-mesh or plastic tube (called a stent) through the endoscope and into the duct.

During the ERCP procedure, a balloon dilation and placement of a stent was performed on the plaintiff's pancreatic duct, and a sphincterotomy was completed on her common bile duct (AR, pp. 168-169).

> A notation from Dr. Jones dated July 8, 2009, states as follows (AR, p. 368):
>
> Following informed consent and the initiation of conscious sedation, the scope was advanced in the usual fashion. The upper endoscopy was unremarkable.
>
> Cholangiography demonstrated a status post cholecystectomy appearance with a status post sphincterotomy appearance, widely patent ductal system, and air bubbles.
>
> The pancreatic stent was removed in the usual fashion with grasping forceps and subsequently a pancreatography was performed demonstrating Cambridge class IV chronic pancreatitis with minimal narrowing at the intraduodenal wall portion of the distal pancreatic duct. No obvious stones, filling defects, or strictures were appreciated. Drainage of contrast was fairly prompt and we saw good flow endoscopically as well. Therefore, I elected not to perform any additional interventional procedures.

6

The plaintiff has been diagnosed as suffering from chronic pain syndrome, with two components. The root component is parenchymal pain syndrome (AR, p. 363). The parenchyma, or functional part, of the pancreas consists of the Islets of Langerhans. Parenchymal pain is the type of upper abdominal pain that is characteristic of chronic pancreatitis and is caused by damage to the parenchyma of the pancreas. In addition, the plaintiff suffers from chronic gastrointestinal (GI) pain due to constipation, cramping, bloating, and swelling (AR, pp. 27 and 355). According to Dr. Jones, the GI pain is, "in no short part," a side-effect of the pain medication, including Lortab and OxyContin, which the plaintiff takes or has taken to manage the pain associated with her parenchymal pain (AR, p. 364).

### Need for Unscheduled Bathroom Breaks

As indicated above, the plaintiff suffers from constipation and GI pain, which is a side-effect of the pain medication she takes to control her pancreatic pain. However, her principal contention upon judicial review is that, due to bouts of diarrhea, the evidence shows that her rate of absenteeism from work and her need for unscheduled bathroom breaks during the workday render her unemployable. In response to a series of questions by the ALJ at the administrative hearing, the plaintiff testified that she experiences "episodes of diarrhea and constipation" that occur about once a week (AR, p. 27). An episode can "go into several days" (AR, p. 27) During one of these days, she may need to visit the bathroom five or six times, with each visit lasting up to an hour (AR, pp. 27-28). The vocational expert (VE) testified that, if accepted, the foregoing limitations would render the plaintiff unemployable at any job because, as a "rule of thumb," most employers will tolerate no more than two absences from work per month and ten minutes of absences from the job-site per hour (AR, pp. 36-37).

In his written decision, the ALJ found that the plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment," i.e., ALJ's Finding No. 5, for the following reasons (AR, pp. 16 and 17):

1. "There is no objective evidence to corroborate statements regarding the time the claimant spends in the bathroom."

2. "Treating notes demonstrate that the claimant's chronic condition and associated abdominal pain is generally under reasonable control with medications ... [and] fiber supplementation, activia yogurt, Kegel exercises, and weight loss." Although the ALJ did not say so explicitly, it appears that an important aspect of the "reasonable control" mentioned by the ALJ is self-control and self-monitoring by the plaintiff of the proper balance among the following: intake of pain medication, which is known to cause constipation; avoidance of large meals and implementation of other dietary manipulations, which are generally advisable in cases of chronic pancreatitis; and utilization of fiber supplementation, etc.

3. "Most of the claimant's aggressive treatment and hospitalizations for pancreatitis predate the alleged onset herein. Since the claimant's alleged onset, she has only been hospitalized once briefly in August 2006." The plaintiff's hospitalization was contemporaneous with her alleged onset of disability date on August 27, 2006.

4. "In February 2009 (three days after the hearing herein), the claimant reported to Dr. Jones that she had been experiencing increasing pain, constipation along with diarrhea, and bloating. Even though the claimant stated she had experienced these symptoms in the past year, it is noteworthy that the claimant had not been seen by Dr. Jones since April 2007. If her condition and symptomology

were as dire as she described in testimony, then it stands to reason that the claimant would have followed up more promptly with her treating specialist."

Generally, an ALJ's credibility assessment cannot be disturbed upon judicial review "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir., 2001). Applying the general rule, in *Harley v. Astrue*, 2011 WL 1542112 (W.D.Ky.), this court recently held that the Commissioner had a substantial basis for declining to fully credit the claimant's testimony of a medically-necessary, disabling level of absenteeism and need for unscheduled bathroom breaks due to diarrhea secondary to chronic pancreatitis where, among other things, there was no hospitalization after the alleged onset of disability date and a consultative examination revealed normal weight. In this case, the plaintiff apparently was hospitalized contemporaneously with her alleged onset date, and she is overweight. The magistrate judge concludes that, as in *Harley*, the ALJ did not err in rejecting the plaintiff's disabling allegations that were uncorroborated by objective evidence.

## **New and Material Evidence**

The plaintiff argues that the evidence at AR, pp. 362-373, which was first submitted to the Appeals Council after the ALJ's decision, constitutes new and material evidence as contemplated by "sentence six" of 42 U.S.C. § 405(g). Among other things, the new evidence consists of the evidence at AR, pp. 363, 364, and 368 discussed at pages 7 and 8 of this report.

Pursuant to "sentence six," the court has jurisdiction to remand this case to the Commissioner for consideration of any "new evidence which is material" if "there is good cause for the failure to incorporate such evidence into the record" as of the date of the Commissioner's final decision. Evidence submitted by a claimant after the ALJ's decision may be considered by a reviewing court only for the limited purpose of determining whether to grant a motion for a "sentence six."

9

See *Cline v. Commissioner*, 96 F.3d 146 (6th Cir., 1996). The party seeking a "sentence six" remand bears the burden of proving that it is proper. *Sizemore v. Secretary*, 865 F.2d 709, 711-712 (6th Cir., 1988). First, a movant must demonstrate materiality of the evidence. Evidence is material if there is a "reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence." Id. Cumulative evidence is not material. *Young v. Secretary*, 925 F.2d 146 (6th Cir., 1990). In addition, the party seeking remand must show good cause for late submission of the evidence.

We agree with the plaintiff that the new evidence is helpful to "clarify what the basis for Ealy's complaints of pain rest on" (Docket Entry No. 12, p. 2). As indicated at pages 6 and 7 of this report, we believe that the new evidence sheds light upon and is helpful to a layperson in arriving at a proper understanding of the significance of the evidence as a whole, including the evidence that was before the ALJ. Nevertheless, in her fact and law summary, the plaintiff concedes that the new evidence is "consistent with all the evidence already in the record" (Docket Entry No. 12, p. 2). She further concedes that, with respect to her medical condition(s) indicated by the ERCP's from 2009, "the condition[s] existed and was objectively diagnosed as early as 2004 by ERCP. T 168" (p. 7). On July 8, 2009, Dr. Jones noted that there had been an "essentially complete resolution of pain with pancreatic duct stenting and sphincterotomy" (AR, p. 368). While we are highly doubtful that the plaintiff would agree with Dr. Jones' suggestion that her pain is now essentially completely resolved, the magistrate judge concludes that the new evidence is cumulative. The plaintiff has failed to show that it is material.

## RECOMMENDATION

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, any party shall have a period of fourteen (14) days, pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period above pursuant to Fed.R.Civ.P. 6(d), for a total of seventeen (17) working days.

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).